## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIA SHENE' LUCAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-2101 (ABJ) |
| | ) |
| ISABELLA CASILLAS GUZMAN | ) |
| *Administrator, U.S. Small Business* | ) |
| *Administration*, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

### BACKGROUND

Plaintiff Nia Lucas is an African American female combat veteran who was employed at the United States Small Business Administration ("SBA") from January 2017 to March 2020. First Am. Compl. [Dkt. # 34-1] ("Proposed Am. Compl.") ¶ 14, 146. Plaintiff sustained serious injuries during her military service, and she suffers from various conditions that affect her ability to work. *See* Proposed Am. Compl. ¶ 9 (listing symptoms including "recurrent migraine headaches, lingering pain and neuropathy in her right extremities from a cervical spine injury, and bi-lateral foot pain and balance challenges from multiple fractures in her feet"), ¶ 12 (noting receipt of workplace accommodations from former employer U.S. Department of Treasury).

Plaintiff alleges that from the outset of her time at the SBA, she was subjected to a "campaign" of harassment and retaliation related to her requests for accommodation in the workplace, principally at the hands of her supervisor. Proposed Am. Compl. ¶ 20. Among other examples, plaintiff claims that her supervisor imposed onerous hurdles to certify the need for

accommodation, denied accommodations when they were justified, and interfered with those that were granted. *See, e.g.*, Proposed Am. Compl. ¶¶ 21, 29, 31–41. Plaintiff also alleges that she was discriminated against on the basis of her gender and race, insofar as her supervisor was a "'touchy feely' manager who was constantly touching and hugging his female subordinates, even where such was unwelcome or clearly inappropriate," Proposed Am. Compl. ¶ 51, and she was "denied promotional and developmental opportunities" on the basis of her race, among other things. Proposed Am. Compl. ¶ 76.

In light of this alleged treatment, plaintiff filed a series of complaints to seek redress for these and other incidents, including;

- An October 3, 2017 complaint with the SBA's internal ethics office related to alleged unlawful overtime work pay practices by her supervisor. Proposed Am. Compl. ¶ 54. Plaintiff alleges that after her supervisor learned of this complaint, he "confronted her, and physically assaulted her by body-checking her into the partition of her cubicle, causing her to fall off balance and stumble." Proposed Am. Compl. ¶ 58;

- A December 26, 2017 complaint with the EEO, "which not only included the disability accommodation issue, but also referenced [her supervisor's] physical assault of [her], as well as his sexual harassment, retaliation and the creation of a hostile work environment," along with "the fact that she was being discriminated against because of her race in being denied promotional and development opportunities." Proposed Am. Compl. ¶¶ 75–76;

- A June 2018 whistleblower retaliation complaint with the Office of Special Counsel, alleging that SBA's tendering of a notice of intent to remove her from her employment with the agency in May 2018 was in retaliation for her filing complaints and other protected activity. *See* Proposed Am. Compl. ¶¶ 107–08, 113; and

- A May 2019 EEO complaint related to the alleged denial of requests for accommodation upon plaintiff's return to work following pregnancy and related leave. Proposed Am. Compl. ¶ 143 (listing EEO Case No. 02-19-005 and EEOC charge 570-2020-00354X).

Plaintiff also filed a claim for worker's compensation based on an incident occurring outside the agency in March 2019. Proposed Am. Compl. ¶ 144. According to plaintiff, when she attempted to report to work after pregnancy-related leave, she was not permitted to enter the

building; instead "federal police had their hands on their weapons, insisting that [she] not proceed further." Proposed Am. Compl. ¶ 132–33. "The scene that ensued [was] reminiscent of stopping a criminal or terrorist from entering the building," Proposed Am. Compl. ¶ 134, and she was told she was "not allowed to come in because her reasonable accommodations were not yet approved." Proposed Am. Compl. ¶ 136. She alleged that the incident aggravated her pre-existing Post-Traumatic Stress Disorder ("PTSD"), Proposed Am. Compl. ¶ 144, a condition that had been diagnosed in April 2018, Proposed Am. Compl. ¶ 106, and she accordingly filed a claim for worker's compensation.

Plaintiff eventually returned to work in May 2019, but, recognizing that her relationship with SBA "was in tatters," Proposed Am. Compl. ¶ 145, she entered into a settlement agreement with SBA in March 2020 "in which she ostensibly released the claims" in her EEO complaints and pending grievances. Proposed Am. Compl. ¶ 146; *see also* Settlement and Release Agreement, Ex. 1 to Mot. [Dkt. # 34-1] ("Settlement Agreement"). Pursuant to the Settlement Agreement, the SBA agreed to compensate plaintiff for attorney's fees for legal representation related to her various complaints; waive any requirement that plaintiff repay any negative sick leave or annual leave balances; convert certain hours from leave without pay to administrative leave (thereby entitling her to backpay); not to appeal or dispute the Department of Labor's November 19, 2019 decision to accept plaintiff's claims for PTSD injury arising out of the March 4, 2019 incident with SBA security; and to remove plaintiff from her position on the basis of medical inability to perform – a "non-disciplinary removal" – rather than some other reason. Settlement Agreement ¶¶ 1–5.

In exchange, plaintiff agreed, among other things, to dismiss with prejudice and to "not re-file this complaint [SBA EEOC Case Number 10-18-0006] or any other actions regarding the issues that are covered by this complaint with any other agency, administrative forum, or judicial

forum." *Id.* ¶ 6.  The release provision also provided that plaintiff agreed to "withdraw, with prejudice, any all and all existing actions against [SBA]" then pending, including, but not limited to:

- "SBA EEO Case Number 10-18-0006 and associated EEOC Hearing Number 480-2018-00057X," *i.e.*, the December 2017 EEOC complaint;

- "SBA EEO Case Number 2-19-005 and any associated hearing request," *i.e.*, the May 2019 EEO complaint;

- "SBA Union Grievance 1-31-2018-1, and any associated arbitration," a union-based grievance not at issue in this case;

- "SBA Union Grievance 228-2-25-2019-MA-1, and any associated arbitration," another union-related grievance not at issue in this case;

- "Office of Special Counsel File No. MA-18-3870," *i.e.*, the June 2019 whistleblower complaint; and

- "Any and all other pending matters asserted against SBA or its employees or officers, in any forum–including, but not limited to the Office of Inspector General (OIG)."

Settlement Agreement ¶ 6(a)–(f).

According to plaintiff, defendant breached the Settlement Agreement in multiple ways. First, plaintiff alleges that, "to date, [the SBA] has not paid Plaintiff's back pay with benefits, [and] has not provided corrected W-2 forms."  Proposed Am. Compl. ¶ 149.  Second, plaintiff alleges that "in direct abrogation of" the Settlement Agreement, defendant "contested Plaintiff's workers' compensation claim, and continues to do so today, and retaliated against Plaintiff by reporting that she was unlawfully receiving benefits from federal employee's compensation."  Proposed Am. Compl. ¶ 150.

The latter alleged breach is predicated on a letter dated January 31, 2022 from the SBA to the Department of Labor, in which a medical case manager within the SBA's CARE Unit requested that plaintiff "be referred for an updated Psychiatric Second Opinion (SECOP) with formal

psychometric and cognitive testing to provide the current clinical status of the accepted conditions, the work-relatedness of current symptoms, additional treatment needed, and current work capacity." Letter from Linda Lanier, RN, Medical Case Manager, CARE Unit, Small Bus. Admin., to Claims Examiner, U.S. Dep't of Labor (Jan. 31, 2022), Ex. 2 to Proposed Am. Compl. [Dkt. # 34-1] ("SECOP Letter") at 52. The letter was accompanied by a report of a physician's review of plaintiff's file. It set forth his medical opinion and noted that plaintiff "was diagnosed with Post Traumatic Stress Disorder (PTSD) by the Department of Veterans Affairs," and that this "diagnosis usually results in an automatic, set disability rating and disability compensation." Physician Review Report, James Caviness, MD, MS (Jan. 31, 2022), Ex. 2 to Proposed Am. Compl. [Dkt. # 34-1] ("Physician Review Report") at 53. The reviewing physician therefore recommended that the claims examiner "ensure there is no overpayment for the same condition with OWCP compensation." *Id.*

On July 14, 2022, plaintiff – then proceeding *pro se* – filed a complaint alleging that defendant unlawfully discriminated and retaliated against her on the basis of her disability, gender, and race in violation of Title VII and the Rehabilitation Act/Americans with Disabilities Act. *See* Compl. [Dkt. # 1] at ¶¶ 1 (Introduction), 29–31 (Statement of Facts). After it was finally served, defendant moved to dismiss the complaint or, in the alternative, for summary judgment, and that motion was fully briefed. *See* Def.'s Mot. to Dismiss Compl. [Dkt. # 17]; Pl.'s Resp. to Def.'s Mot. to Dismiss [Dkt. # 22]; Def.'s Sealed Reply in Supp. of Mot. [Dkt. # 24]; Pl.'s Surreply to Def.'s Reply [Dkt. # 30].

Plaintiff acquired legal counsel while defendant's motion was pending, and, with the assistance of counsel, filed a motion for leave to amend her complaint. *See* Pl.'s Sealed Motion

for Leave to Amend [Dkt. #34] ("Mot.").  The proposed amended complaint largely tracks the

original complaint (albeit in a much-streamlined manner), and it consists of nine counts:

- **Count One** alleges that defendant violated section 501 of the Rehabilitation Act by repeatedly denying plaintiff's requests for accommodation.  Proposed Am. Comp. ¶ 184.

- **Count Two** alleges that defendant violated Section 501 of the Rehabilitation Act by "interfer[ing] with Plaintiff's accommodations and incumber[ing] her ability to do her work."  Proposed Am. Comp. ¶ 192.

- **Count Three** alleges that defendant violated section 501 of the Rehabilitation Act by "subject[ing] Plaintiff to different, and more harsh terms and conditions of employment than her non-disabled colleagues."  Proposed Am. Comp. ¶ 201.

- **Count Four** alleges that defendant violated section 501 of the Rehabilitation Act by creating a retaliatory hostile work environment in response to her requests for accommodation and filing EEO complaints.  Proposed Am. Compl. ¶¶ 209–13.

- **Count Five** alleges that defendant violated section 501 of the Rehabilitation Act by subjecting her to retaliatory adverse actions in response to her requests for accommodation and filing EEO complaints, including "giving her an unfair and dishonest performance evaluation, by denying her the right to overtime pay, by proposing disciplinary action without basis or justification, by denying her promotional and development job opportunities, by terminating her employment, and by falsely accusing Plaintiff of having engaged in benefits fraud."  Proposed Am. Compl. ¶ 224.

- **Count Six** alleges that defendant violated Title VII of the Civil Rights Act by discriminating against her on the basis of race.  Proposed Am. Compl. ¶¶ 231–36.

- **Count Seven** alleges that defendant violated Title VII of the Civil Rights Act by discriminating against her on the basis of her gender and/or subjecting her to gender-based harassment.  Proposed Am. Compl. ¶¶ 241–47.

- **Count Eight** alleges that defendant "fraudulently induced Plaintiff into waiving her claims" and seeks a declaration from the Court that the Settlement Agreement's "waiver and release of claims is unenforceable as a matter of law."  Proposed Am. Compl. ¶¶ 256, 258.

- **Count Nine** alleges that defendant "materially and irrevocably breached the agreement by contesting Plaintiff's worker's compensation claim, alleging that Plaintiff had engaged in benefits fraud," Proposed Am. Compl. ¶ 262, and she argues that recission of the Settlement Agreement is an appropriate remedy. Proposed Am. Compl. ¶ 265.

Defendant opposes plaintiff's motion, *see* Def.'s Sealed Opp. to Mot. [Dkt. # 43] ("Opp."), and the matter is fully briefed. *See* Pl.'s Sealed Reply in Supp. of Mot. [Dkt. # 45] ("Reply").

## LEGAL STANDARD

When a plaintiff may no longer "amend [her] . . . pleading as a matter of course," she "may amend [her] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.*

However, "[w]hile a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend a complaint freely, it need not do so where the only result would be to waste time and judicial resources." *Ramos v. Barr*, Civ. Action No. 13-0328 (ABJ), 2020 WL 13695151, at *3 (D.D.C. Aug. 11, 2020), quoting *Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005) (cleaned up), *aff'd*, 77 F.4th 932 (D.C. Cir. 2023). Specifically, a district court should deny a motion for leave to amend if there is, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile "if the proposed claim would not survive a motion to dismiss." *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016).

## ANALYSIS

Defendant argues that the Rehabilitation Act and Title VII claims repackaged in Counts One through Seven of the proposed amended complaint suffer from the same infirmity as those in the original complaint – namely, that plaintiff released them in the parties' Settlement Agreement. *See* Opp. at 8–9. Plaintiff does not contest this point directly, but she argues that the "threshold question of whether [she] can pursue claims that were covered by a settlement agreement that was

clearly breached by Defendant is a matter of law that does not control what should or should not be in the Complaint." Mot. at 7.

The Court cannot agree that questions regarding the Settlement Agreement's scope and applicability are irrelevant to plaintiff's motion to amend her pleading; if the Settlement Agreement is valid, permitting plaintiff to amend her complaint to add released claims would be an exercise in futility, as those counts would need to be dismissed upon defendant's later motion. And here, Counts One through Seven of the proposed amended complaint are plainly covered by the Settlement Agreement. Collectively, the Counts allege unlawful and discriminatory conduct by defendant occurring between January 2017 and May 2019 – precisely the same claims that defendant brought before the EEOC and then released in the Settlement Agreement. *See* Compl. at 38 (December 2017 Formal Complaint for discrimination and retaliation on the basis of race, color, sex, and disability); Compl. at 57 (informing plaintiff that prior EEO complaint will be amended to reflect additional facts based on May 2018 and June 2018 request to file separate EEO complaint); Compl. at 60–63 (identifying May 2019 complaint as EEO Case No. 02-19-005 and attaching Formal Complaint for discrimination and retaliation on the basis of race, color, sex, and disability).

Therefore, plaintiff may pursue Counts One through Seven only if there is a reason to void or rescind the Settlement Agreement. Plaintiff alleges that the Agreement is voidable or should be rescinded because defendant fraudulently induced her into releasing her claims (Count Eight), or because defendant breached the Agreement (Count Nine). Proposed Am. Compl. ¶¶ 250–266. Defendant disagrees, arguing that the allegations in the proposed amended complaint supporting those two new counts are insufficient as a matter of law and, therefore, amendment would be futile. Opp. at 10–16.

### A.    Count Eight - Fraud in the Inducement.

To state a claim for fraudulent misrepresentation or fraud in the inducement, a plaintiff must plausibly allege that a person or entity: "(1) made a false representation of or willfully omitted a material fact; (2) had knowledge of the misrepresentation or willful omission; (3) intended to induce [another] to rely on the misrepresentation or willful omission; (4) the other person acted in reliance on that misrepresentation or willful omission; and (5) suffered damages as a result . . . ." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015), quoting *Schiff v. AARP*, 697 A.2d 1193, 1198 (D.C. 1997); *see also Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 195 n.1 (D.D.C. 2016) (noting that the elements of a fraudulent inducement claim are "essentially the same" as the elements of a fraudulent misrepresentation claim).

Plaintiff alleges that defendant fraudulently induced her into signing the Settlement Agreement because defendant "had no intention to honor its obligation when it executed the settlement agreement, and that it fraudulently, and in the bad faith consistent with all of its interactions with Plaintiff, induced Plaintiff to waive her claims in exchange for an obligation Defendant was never going to honor."  Proposed Am. Compl. ¶ 255.  Such allegations are plainly insufficient to state a claim for fraudulent inducement.  Plaintiff fails to identify any false representation made by defendant in the course of negotiating the Settlement Agreement; nor does she allege knowledge on the part of defendant that any representation was false and made for the purpose of inducing plaintiff to sign the Settlement Agreement.  Plaintiff's allegations in the proposed amended complaint can – at most – be read to suggest that defendant entered into the Settlement Agreement with the intent to deliberately breach it at a later date.  Such allegations, however, cannot sustain a claim for fraud.  *See Fuentes-Fernandez & Co., PSC v. The Corvus Grp., Inc.*, 174 F. Supp. 3d 378, 393 (D.D.C. 2016) (a plaintiff cannot state a "fraud in the

inducement claim [that] is indistinguishable from the breach of contract claim except that plaintiff has added a conclusory allegation that [defendant] had its fingers crossed when it executed the contract"); *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) "([T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship.").

### B.     Count Nine - Breach of Contract.

To prevail on a breach of contract claim, a plaintiff must establish "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by [the] breach." *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014), quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *see also Xereas v. Heiss*, 987 F.3d 1124, 1135 (D.C. Cir. 2021).  Plaintiff alleges that the Settlement Agreement constitutes a valid contract between the parties, Proposed Am. Compl. ¶ 260, which defendant does not dispute.  Plaintiff nevertheless claims the Agreement should be rescinded because defendant "specifically and intentionally violated both the terms and the spirit of the settlement agreement" in a manner "so significant as to abrogate it altogether" when it requested a second opinion regarding plaintiff's PTSD diagnosis.  Proposed Am. Compl. ¶ 159.  She further claims that the letter supports the inference that defendant "had no intention of honoring its obligation not to contest Plaintiff's worker's compensation claim" and "entered into settlement negotiations in bad faith."  Proposed Am. Compl. ¶ 161.

Even accepting plaintiff's factual allegations in the proposed amended complaint as true, amendment here would prove futile.  According to the terms of the Settlement Agreement, defendant agreed in March 2020 "not to appeal or dispute the Department of Labor's November 19, 2019 decision to accept Complainant's claims for Post-Traumatic Stress Disorder (PTSD)

injury." Settlement Agreement ¶ 4. Over two years later, defendant requested that plaintiff undergo an updated psychiatric evaluation "to provide the current clinical status of the accepted conditions, the work-relatedness of current symptoms, additional treatment needed and current work capacity." SECOP Letter. Although plaintiff may consider defendant's request to be odious and unnecessary, the amended complaint does not state a claim that the January 31, 2022 letter constituted a breach of the Agreement. Defendant did not agree to support plaintiff without question and in perpetuity for the injuries arising out of the March 4, 2019 incident, but only to let the Department of Labor's November 19, 2019 decision accepting her PTSD claim stand. Defendant's later inquiry into the current state of her work-related disability and the basis for ongoing payments did not "dispute" or appeal the Department's initial decision that plaintiff was, in fact, injured on the job. Plaintiff's proposed claim for breach of contract would therefore fail because she has failed to plead an essential element: a breach of the Settlement Agreement significant enough to warrant recission.

This means that the Court lacks any basis to find that the Settlement Agreement is void or should be rescinded, and that leaves plaintiff with no other grounds to argue that her claims are not barred by that Agreement.

## CONCLUSION

Because plaintiff's claims for fraudulent inducement (Count Eight) and breach of contract (Count Nine) in the proposed amended complaint would fail as a matter of law, the parties' Settlement Agreement remains in force.  And because plaintiff expressly released the claims she now seeks to bring in Counts One through Seven, the Settlement Agreement acts as a bar for relief in this Court.  Plaintiff's motion for leave to amend her complaint [Dkt. # 34] will therefore be **DENIED**, and defendant's motion to dismiss [Dkt. # 17] will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 1, 2024